STATE of Maine

v.

**Roger LEBEL.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 7, 1991.

Decided July 25, 1991.

Janet T. Mills, Dist. Atty., Auburn, for State.

Allan E. Lobozzo, Auburn, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

ROBERTS, Justice.

Roger Lebel appeals his conviction in the Superior Court (Androscoggin County, *Lipez, J.*) of gross sexual misconduct, 17–A M.R.S.A. § 253 (Supp.1990). Lebel contends the court erred in excluding evidence regarding his character and evidence of bias of the victim's family against him. Lebel also challenges the court's limitation on a testimony readback to the jury. Be-

cause Lebel's offer of proof was insufficient to justify introduction of the evidence in question and because the limitation on the readback was within the court's discretion, we affirm the judgment.

Lebel was indicted on one count of gross sexual misconduct in January, 1990. The trial began in July of 1990 and was centered mainly upon the testimony of the victim, Lebel's former stepson. The victim, who was seven years old at the time of the offense, testified that, on more than one occasion in the spring of 1989, Lebel performed a sexual act upon him and threatened physical violence against him if he told anyone. At the time, Lebel was married to the victim's mother.

The mother testified that Lebel had violently beaten her son on several occasions and that the boy feared Lebel. She further testified that she left Lebel alone to babysit her son on a number of occasions and, toward the end of the marriage, her son frequently asked her not to leave him alone with Lebel. When she noticed the boy performing simulated sexual acts with one of his cousins during the summer of 1989, she sent him to a psychologist to whom the boy finally stated that he had been sexually molested by his stepfather.

On the witness stand, Roger Lebel denied committing these acts. In addition to Lebel's testimony, the defense attorney requested permission to present testimony of Chuck Weatherell, a man who had employed Lebel as an ice cream truck driver for nearly 14 years. According to Lebel's attorney, Weatherell would testify as to Lebel's responsibility with children and his trustworthiness. The court ruled that the testimony was inadmissible.

Lebel also requested the opportunity to testify regarding the hostility he had endured from his ex-wife's family. According to Lebel such testimony would have been pertinent to show a possible bias in the victim's testimony. In order to determine the admissibility of this evidence, the court conducted a voir dire of Lebel, who testified that several years prior to the initial sexual abuse complaint, he had received a series of harassing phone calls, a visit from the Department of Human Services regarding complaints of child abuse, and vandalism to his truck, which included threats written on the truck saying that he would "pay for this." Lebel attributed these actions to his ex-wife's family, claiming that they were angry about his refusal to allow her to continue babysitting for them. Lebel testified that the harassing phone calls continued for several months and that he had the telephone company put a trace on his phone to determine their origin. After several more months, he was told that the phone calls were coming from the residence of his sister-in-law.

The court ruled that the testimony regarding origins of the child abuse complaint and vandalism to the truck were inadmissible since Lebel was only able to speculate that they originated from his ex-wife's family members. The court also refused to allow testimony regarding the telephone trace holding that such evidence was hearsay. The court allowed Lebel to testify that his ex-wife's family had been hostile toward him and that he believed that this hostility stemmed from his refusal to allow her to continue babysitting for them. Similarly, Lebel was allowed to testify that he had brought a harassment complaint against the sister-in-law.

After several hours of deliberation, the jury requested that a certain portion of the testimony be read back. They wanted to know specifically, what Lebel's ex-wife had testified to regarding who had performed babysitting services prior to March 1989. The court found that the testimony regarding Roger Lebel's babysitting was dated as being prior to March 1989 since Roger left his wife in late March or early April 1989. Over the objection of Lebel's attorney, the court refused to allow a readback of the portions of Lebel's ex-wife's testimony regarding the babysitting services of a man named "Jimmy" because Lebel's ex-wife had provided no date for these services. Within an hour the jury returned a verdict of guilty on the charge of gross sexual misconduct.

## I.

Lebel argues that the testimony of Chuck Weatherell was incorrectly excluded from evidence since it was intended to prove a "pertinent" trait of Lebel's character. Rule 404(a)(1) states:

(a) **Character evidence generally.** Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

1) *Character of accused.* Evidence of a pertinent trait of character offered by an accused or by the prosecution to rebut the same.

In the past, we have held that Rule 404(a)(1) confines such character evidence to proof of a "specific trait of ... character, the existence or non-existence of which would be involved in the non-commission or commission of the particular crime charged." *State v. Wells*, 423 A.2d 221 (Me.1980). The prevailing view, and that emphasized in *Wells*, is that only "pertinent" traits are provable. We do not find that Lebel's offer of proof attained a level of specificity sufficient to demonstrate that the evidence proffered was pertinent to the case.

In *Wells*, the defendant was a store clerk who was accused of assaulting a patron while at work. There, we held inadmissible testimony from the employer who merely claimed that he had no prior complaint of the defendant's behavior and that the defendant had a good reputation among employees. *Id.* at 223. In the instant case, the testimony that Lebel purported to offer is similar to that at issue in *Wells*. The court specifically asked Lebel's attorney to explain what character trait he wanted to prove through Weatherell's testimony. In response, the attorney replied that he intended to offer evidence of Lebel's reputation for being responsible or trustworthy with children among those who observed him working as an ice cream truck driver.

We do not find such an offer to have reached the standard of specificity required to show it pertinent. "Rule 404 confines such character evidence to proof of a perti-

nent trait of the accused, which must be interpreted to mean such specific trait of his character, the existence or non-existence of which would be involved in the non-commission or commission of the particular crime charged...." *Wells*, 423 A.2d at 224. Without some showing that an outward appearance of public responsibility with children "would be involved in the existence or non-existence of the crime," Weatherell's testimony was inadmissible.

## II.

Lebel also argues that the trial court erred in preventing him from testifying regarding his wife's family's hostility towards him. We disagree. We have held that "evidence of another person's threats toward a defendant, standing alone, is not admissible to show that the other person had anything to do with the crime charged or the prosecution of the defendant [absent] additional evidence connecting the other person with the crime or with the proceedings." *State v. Kotsimpulos*, 411 A.2d 79, 81 (Me.1980). In the instant case, there is absolutely no evidence connecting any member of the mother's family to the alleged complaints of child abuse, the threats or the vandalism, much less to the testimony of the victim.

Moreover, Lebel was not a proper person to testify regarding the trace he claims was put on the harassing telephone calls. Lebel had no direct knowledge of the trace or how it was performed. He was able to testify only as to what the phone company told him. His testimony was thus properly excluded as inadmissible hearsay.

## III.

Finally, Lebel argues that the refusal of the trial judge to have portions of the testimony read back unduly emphasized certain facts to the jury. In the instant case we cannot find that the court abused its discretion in excluding the evidence. Although we might normally question ex-

cluding possibly relevant evidence from a jury request, the court here was faced with the equally valid concern of potential confusion that might result from including testimony about undated events with testimony regarding dated events. The court did not err in excluding the testimony from the jury request.

The entry is:

Judgment affirmed.

All concurring.